The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Before we begin the cases today, I would like to ask for a moment of silence in memory of our departed colleague, Judge Juan Torrea, who will be missed and we'll start a moment of silence now. Thank you. And before the first case is called, Judge Kayada and I would like to welcome Judge Casper to the bench today. I know you've sat with us before, but we are most grateful for your help, Judge Casper. Thank you. Okay, Dan, we are ready. Today's cases will be called as previously announced and the names and the times will be as allotted to counsel. The first case today is United States v. Juan Pedro-Vidal, appeal number 19-1441. Mr. Patalsky, whenever you're ready. Thank you, Your Honor. Good morning again, Your Honors. My name is Steve Patalsky. I represent the appellant Juan Rafael Pedro-Vidal. This is a case out of the District Court of Puerto Rico where the government is seeking the death penalty. Because of that, Local Rule 144A, which deals with appointment of counsel in capital cases and case management, is applicable. The provisions of subsection K are what are at issue here today. According to subsection K, there will be an aggregate 180-day period from indictment within which the government must file a notice of intent to seek the death penalty. The last 30 days of that 180-day period is the time from when the attorney general receives the appropriate paperwork from the government. The provision in the Local Rule says, unlike any other part of the Rule, that it will be strictly enforced and provides a single sanction for noncompliance, striking an untimely notice of intent to seek the death penalty. But counsel, isn't that still within the discretion of the District Court? Absolutely, Judge Kasper. That was my next sentence. The Rule used to be mandatory. It used to provide no extensions will be granted and it shall not be a death penalty case. That was changed. It is now squarely within the court's discretion upon the showing of a violation. Here, clearly the notice was not filed within 180 days nor within 30 days of the attorney general's receipt of the materials. The District Court did not understand what its discretion was in this case because the District Court, as the government in its brief, is focusing on 144B which deals with the identification initially that this is a capital case. 144B is concerned with appointment of counsel and says the government must file a certificate that death is a possible penalty. The sole purpose of that Rule, as this court, in an opinion authored by Judge Howard, recognized in Lopez-Matias, the purpose of 144B is to make sure that learned counsel, counsel experienced in death penalty cases, is appointed in a timely fashion. In Lopez-Matias, the government violated that section of the Rule. The court struck the death penalty as a sanction and this court reversed because learned counsel was very promptly appointed and business as usual. We deal here with an entirely different section of the Rule with entirely different purposes and one which says specifically these timelines will be strictly enforced and if you don't comply, the sanction is striking the notice of intent in the court's discretion. I agree with you that the court focused quite a bit on the certificate issue but it seemed to me it did because the parties including the defendant did and I didn't see in the record any argument by the defendant of any prejudice at all as to the delay in the service of the notice of intent. Did I miss something? Your Honor, I appreciate that question. I'd like to be very clear that in no way did we bury this issue. In no way did we try to bait the court into thinking we were talking about 144B when in fact we were concerned with 144K. Our initial motion clearly set out several different ways that what we were talking about was a violation of 144K and an untimely notice of intent. We mentioned the failure to file a certificate of death eligible case which the court had just asked about only as a further example of the chronic violation of the local rules by the government. The same way in 2008 in Lopez Matias, the government didn't file a certificate of death eligible case, the government did not do that in this case either but our claim, our motion was not based on that. We just used that as an example. I know the court reviewed the government's brief in this case. There are five separate references to no prejudice or no need for an evidentiary hearing because the sole purpose of the rule, prompt appointment of learned counsel, took place. That's not our claim. That has nothing to do. Let me go back to my question if I could. Did you make any argument below that your client suffered any prejudice as a result of the delay in serving the notice of intent? I think I'm hearing you say no, you did not present any evidence but you're relying on inherent prejudice as a result of the delay. Partially so, your honor. What evidence of actual prejudice did you put forth? Thank you. But in regards to your request for an evidentiary hearing on this particular issue, what would you have offered at that point to follow up on my colleague's question? Certainly as this court is clearly aware, the standard now under the local rule for a violation of the filing is in the court's discretion. We believe it would be important, for example, for the court to know why instead of filing the notice within 30 days of receiving the material, the government took eight months. That's not just an oversight or something that should not require an explanation. The rule says within 30 days of getting all of this, you must file your notice. The government took eight months. Why? If there were a good explanation for that, one which the court found credible, then that would weigh against the discretionary relief that the rule provides for. If the government said, hey, we just didn't think it was important, then that would weigh heavily in favor of the relief that the rule provides for. We were prepared to present evidence, and we laid this out in the motion, showing a chronic and habitual violation of the local rule by the government time and time and time again. I need to be very clear. I'm not in any way pointing a finger at Mr. Gottfried, who is standing for the government today and is the prosecutor in the case. This is something that extends well beyond him. We've seen time and time again that the government pays no attention to the requirements of the local rule. We believe that's important to the court's informed exercise of discretion. I believe there's an argument made that a large percentage of the delay was caused by the defendant's request to have more time to put together a presentation to pitch the government on why it should not seek the death penalty. I think that's correct, Your Honor. The main response to that is, as I've said, the rule is broken up into different terms that aggregate 180 days. The last term is that from the time the proper paperwork is presented, 30 days later, a notice shall be filed. We went up to the Department of Justice. We met with the committee. Rather than learning his fate within 30 days, as the rule requires, our client, through absolutely no fault of ours, through nothing we did, through no request for extension or anything like that, sat for eight months every day, uncertain whether the government would seek to end his life. That's exactly the prejudice that the Second Circuit found in dismissing an entire case, not simply striking a notice of intent. This uncertainty is a little odd in a case like this. Your client is uncertain for, let's assume, more than the requisite period of time. Had the uncertainty been eliminated, he would have been told sooner that the government was seeking the death penalty. How does moving him from a state of uncertainty as to perhaps the government will, perhaps the government won't, to a state where he knows the government is seeking the death penalty, how does that cause prejudice? I could see the other way if they delayed letting someone know that they weren't seeking the death penalty, but it's sort of an unusual prejudice. I think the court's correct about that and I certainly want to be responsive to the court's question. I will preface that by noting that the court's very valid question is exactly the type of inquiry that the district court, in the exercise of its informed discretion, would rightfully want to know. For this court, to answer that question, I'd have to go well beyond matters that are in the record and talk about the procedural mechanisms that kick in when a notice of intent to seek death is filed. Without getting into those specifics, unless the court tells me it wants to hear it because it's not in the record, when a notice of intent is filed, certain things start to happen that don't happen before. For example, there is what's called a post-authorization budget, which is presented to the court and then ultimately to the First Circuit as to funding matters that were not requested or required prior to the Attorney General's decision. That's simply one aspect that makes it a different set of circumstances than when it's simply pending as an unauthorized death-eligible case. You seem to be suggesting that you still have some more cards to play in the court below, but the court didn't give you a hearing. As I understand it, you were seeking some affirmative relief from the court below, which is a striking of the death notice. Aren't you obligated in seeking that relief to marshal and come forward and explain to the court certainly everything that's within your knowledge that would support your claim, such as an explanation of why your client feels he was prejudiced by the delay and how you account for the delay that you yourself caused, notwithstanding your claim that delay prejudices your client? First, I don't think that the 30-day part of the rule and the eight-month as of now unexcused delay by the government is in any way delay that the defense caused or that is attributable to us. You extended the period of uncertainty by pushing back the presentation to the government. That's correct, but when I'm talking about a period of uncertainty, we had gone up to Washington, we had made our presentation, and all that was left was for the attorney general to decide. That's the period of uncertainty where the rule is very specific, 30 days. If the court feels it's appropriate to extend that time, the court has the discretion to do it. If hearing the full facts and circumstances, the court feels it's appropriate. What we did upon the violation of the rule, upon the failure to file the notice in time, we filed a motion pursuant to the local rule asking the court to consider a number of factors in the informed exercise of its discretion. The court summarily denied all of those grounds save for ordering briefing on the issue of whether the voting rights issue that is also before the court today would permit it to strike the death penalty. Judge Kasper? Counsel, I guess I'm still not understanding what the showing would have been in an evidentiary hearing because all of what you're talking about are the things that are a matter of argument in terms of the steps that counsel may or may not have taken if they'd had sort of earlier notice of the government's decision. As a factual matter, I guess to follow up on my colleague's question, what was barring you from developing those arguments further before the district court? It's not clear to me what factual records you need to make the argument that your client was prejudiced. Well, it's our position that under Section K of the local rule that prejudice is already presumed. In other words, it's a scheduling order. As I've said, this court and the district court have both recognized that disobedience of a scheduling order is inherently prejudicial to the other side and the judges of the district court in Puerto Rico collectively enacted a local rule that says if you violate this scheduling order, the sanction in the court's discretion is striking the death penalty. So it's our position that a further showing of prejudice is not required. However, having said that, we were prepared to demonstrate what that prejudice was consistent with established case law from this court about prejudice from disregard of scheduling orders. We weren't able to establish that there was no good reason for the government's delay, which is, we believe, a very important factor in the court's exercise of discretion. Follow-up questions from the court? Well, thank you, Mr. Petoskey. We'll hear from Mr. Gottfried. If you would mute your video and audio. May it please the court? Yes. And just a technical matter. I'm having some disruption in the connection. So if at any point you don't hear me, just please let me know and I'll repeat whatever I've just said. One of the questions here before the court is, or one key point here, is that abiding by the letter of the 180-day local rule would have meant making a capital decision without a mitigation presentation from defense counsel. The local rule sets up a 90, 60, 30-day timeframe, which would have meant, in this case, December 2016, that's when the grand jury returned a five-count indictment, including three counts punishable by death. Under the local rule, by March 2017, that was the deadline for defense counsel to present to the United States Attorney and Attorney General all mitigating factors. The next deadline under the local rules would have been May 2017. That would be the deadline for the government to conclude the death penalty evaluation memo to the Attorney General. And the final deadline under the local rule would have been June 2017, for the government to file its notice of intent. Now, here what actually happened. In this case, the defense counsel did not file any mitigation presentation 90 days. In fact, it made the presentation 313 days after the indictment, which is 223 days after the deadline for submitting it. Now, I'm not faulting defense counsel here for doing that. I understand, and the government tried to be understanding during this process, that putting together a mitigation presentation often takes more than 90 days, notwithstanding what the local rules say. In fact, in United States v. Lopez-Matias, Brother Counsel was actually learned counsel in that case as well. And in footnote 13 to that case, it says, quote, At oral argument, learned counsel attested that six months to one year is required to assemble and present mitigation evidence, unquote. So all this, if I understand it, says we should ignore or understand eight months of the delay, which they caused to do the presentation. That still leaves you with another five months of delay that had nothing to do with postponing the meeting. Yes, Your Honor. So let me break that down. So there are two other deadlines for the government. One is that May 2017 deadline for submitting the death penalty evaluation memo. That deadline the government did hit. The U.S. Attorney's Office submitted its death penalty evaluation form to D.C. within that timeframe. So the remaining timeframe that we're dealing with is filing the capital notice. And yes, Your Honor, within 30 days of the mitigation presentation in October, the government did not file the notice. Nonetheless, we were under the impression, and I would argue reasonable impression, that the court was giving us the opportunity to make that decision. And where do we get that from? In June 2018, past the 180 day timeframe, past the 30 day timeframe, the government informed the court during a status conference. This is docket number 473, that it was awaiting a decision from the capital committee. The court scheduled another status conference. Notably, at that conference, the court did not say, don't bother issuing or filing a capital notice. Capital punishment is off the table. Notably, during that status conference, defense counsel did not say, we are demanding a status, we are demanding a capital notice or the court strike it. Not just during that meeting in July 2018, at docket number 508, another status conference. Again, the government informed the court with defense counsel present, that defendant, Vidal, that we were waiting for a presentation, waiting for a decision. Again and again, what we see here, Your Honor, and excuse me, I just want to be clear here on my docket numbers. Docket number 398, that was December 7th, 2017. So that is approximately a month and a half after the capital presentation. The government informed that they were still waiting on the decision. And docket number 445 is the March 13th, 2018. Again, the government again informs the court. So counsel, you're not suggesting that the district court doesn't have discretion at some later point, even having not raised the issue perhaps to a sponte earlier, that the district court in effect loses its discretion to strike it later on. No, we're not suggesting that. I think in this situation, in response to the panel's question as to why the government believed it was under the impression that it had time to issue the decision, again, it goes back to the fact that the government repeatedly, sometimes month after month, was informing both the court as well as defense counsel of the time frame. And when we're talking about the bulk of the delay for the 180-day rule, a lot of that rests upon the fact that we were waiting on a mitigation presentation from defense counsel. What would have prevented the district court judge at any of those status conferences from saying, well, you're way outside the time you've had long enough. You're out. To the extent that the district court were to do that under this court's decision in Lopez Matias, there would still need to be a finding of prejudice because this court has or the circuit has clearly held that striking the notice is tantamount to striking an indictment for which a finding of prejudice is required. So while a court, if there were a finding of actual prejudice, could strike the notice, in this case, there was no such finding. And what would have prevented the court at some point along from saying, at this point, I really need the government to do a showing of lack of prejudice or what its reasons are beyond that you're simply waiting. Why hasn't the attorney general or the committee made its decision, which I think is part of what's being argued here is that at some point that burden shifts to you. Yeah, I would respectfully disagree that the burden shifts to us. There is to the court that the extent that the court wants to set a deadline and to say to the government, listen, the mitigation presentation has happened. I'd like you to issue a certificate by such and such date. The court could say something to that effect. But to the extent that the court, in addition to that, would be inclined to dismiss the notice, we believe that there has to be an affirmative finding of prejudice and it doesn't just shift to the government. So what do you make of counsel's argument that ordinarily with scheduling orders, there needs to be cause for the delay, for the extension, for the continuance, which suggests that in some cases anyway, there is a burden shifting. I would argue, Your Honor, that scheduling orders like local rules are subject to the federal rules of criminal procedure, that there is a hierarchy or a pecking order. Federal Rule of Criminal Procedure 52A clearly says that any error, defect, irregularity or variance that does not affect substantial rights must be disregarded. And this court in Lopez Matias adopted the Supreme Court's holding in Bank of Nova Scotia and applied that to the motion to strike a death penalty notice. So I think that regardless of whether or not we're talking about a local rule or a scheduling order, we're still under that umbrella that we need some kind of affirmative prejudice to be proved. Would you agree that a person who has to wait five additional months to learn that the government is not seeking the death penalty is in some meaningful way prejudiced by having to be under the sword of Damocles for an extra five months that he wouldn't have been under had there been no delay? Your Honor, I don't necessarily believe that to be the case, and I don't think that there's any indication that it was the case here. To the contrary… I'm not asking about here. I'm asking about… I'm charged with a death-eligible crime. I want to know, am I going to be charged? Is the government going to seek the death penalty or not? There's a rule that says they'll tell me in 30 days after the meeting. Thirty days go by and I don't hear anything. I don't hear anything. Five months go by and finally the government tells me that they're not seeking the death penalty. Haven't I been prejudiced by having to go through five additional months of thinking I might be put to death and before learning I wouldn't? Your Honor, I think that it could work the other way, that during those five additional months you had hoped that the government would not seek the death penalty, and therefore you were under lesser stress and anxiety, and eventually when those five months pass you have the certainty that the government will seek it. So I don't think that we can assume… No, no, no. I'm talking about when the government doesn't seek it. Doesn't seek it. Again, Your Honor, I think it's difficult to make a generalization. It's possible that with a particular defendant, the uncertainty of those five months could be difficult, and then the relief upon finding that the death penalty is not being sought. At the same time, during those five months, the defense counsel has had an opportunity to better prepare his case and he's had the benefit of learning counsel for five additional months. So I think it's difficult to make generalizations or to make assumptions of prejudice either way. And I would note that the FDPA in 18 U.S.C. 3593 provides that the government must provide the notice a reasonable time before the trial or before the acceptance by the court of a plea of guilty. Here it's clear that the government was in compliance with 3593. It filed the notice well within the timeframe for any trial, which hasn't even yet been set. Counsel, what about the denial of an evidentiary hearing on this issue? I think your brother is suggesting that if there had been an evidentiary hearing, the petitioner would have offered evidence about the delay in this case and prejudice from this case. But I thought there was also suggestion about offering evidence of the government's delay in other cases, that this isn't isolated. To what extent, what's the government's position on whether or not it would have been appropriate to offer evidence of delay in other death penalty cases if there had been an evidentiary hearing? Your Honor, I think that two main responses. One is that the ultimate question is whether or not there was prejudice to the defendant, which, as this panel pointed out, is something that is largely within the control or possession of the defendant. He's in the best position to know how and in what way he has been prejudiced. With respect to delay in other cases, the additional question, if we were to assume that it's relevant, and I'm not sure that it is, if we assume that it's relevant, the question is why do you need an evidentiary hearing? If you want to know whether or not the government has filed a capital certification or a notice of death penalty, you can go to PISA. This is not something that requires testimony from witnesses or paper discovery. This, again, is something that is well within the possession of the defendant. Counsel, could you spend a minute on the collateral order doctrine? I just want to give the court an opportunity to ask questions if it would like to. Is there anything you'd like to say about it? Yes, Your Honor. I think that here the collateral order doctrine does not apply because of prong three of Cohen, which requires that in order for the collateral order doctrine to apply, it has to be effectively unreviewable on appeal from a final judgment. Here, the death penalty notice is effectively reviewable because improper notice is vindicated through one of two ways. First, resentencing after striking the death penalty notice, or two, a new trial. Either of those would result in the fact that the order would not be effectively unreviewable on appeal. I understand that there are efficiency arguments that have been made. Let's resolve this now so that we don't go through all the expense in the event that the First Circuit is inclined to strike the notice. Nonetheless, the Supreme Court has severely limited this court's opportunity to hear collateral appeals. There are only three types of motions that have been found immediately appealable. Motions to reduce bail, motions to dismiss on double jeopardy grounds, and motions to dismiss under the speech or debate clause. Each of those is readily distinguishable from the case at hand. Your Honor, if I can make one last point. It's not in the collateral order doctrine, but it's going back to the 1445A. Of course. One further point I'd like to make is that the government in this case filed an indictment without the special findings initially. We did not yet have a decision from the Attorney General. There were no special findings, and therefore, under the U.S. Code, that was not a death penalty. That was an indictment on which the government could have sought the death penalty. Once the Attorney General made up his mind, we then superseded the indictment with the special findings. While that indictment did not have the special findings, the defendant had the opportunity to enter a straight plea to that indictment and avoid the death penalty. I mention that because to the extent that we're arguing that the delay in the government and the Attorney General finally issuing the decision, the delay in the government issuing a superseding indictment somehow prejudiced the defendant. I would argue to the contrary. He actually had a longer period of time in which to make a decision upon an indictment that did not have the special findings. Questions from the court? Thank you, Mr. Gottfried. Thank you, counsel. Your Honor, may I have one minute to respond by way of rebuttal to a question the court asked the government and also to something that Mr. Gottfried brought up? I need 30 seconds on each point. Yes. As to the question about collateral order, we cited in our papers the Ferebee and the Wilk cases, both of which held that it was proper for interlocutory review of an order refusing to strike the death notice. This very court in the Al Lopez assumed, albeit without deciding, but assumed that that was a correct interpretation of the law. There's a circuit split, right? I'm sorry, Your Honor? There is a circuit split on the issue, is there not? The Fourth Circuit and the Eleventh Circuit have squarely held that it's appropriate. This court has assumed without deciding. The Second Circuit in Robinson came out the other way? I believe that's correct, Your Honor. Okay, thank you. Your second point? May I just, very briefly, this court, Your Honor, in Lopez-Matias, said the following. Is this on to your second point? It's the first, it's just to conclude. Please move to my second point. Yes, Your Honor. Mr. Gottfried said that this court in Lopez-Matias held that striking a death notice was tantamount to striking the indictment. There is a crucial qualification to the court's holding that I'd like to set out. Your Honor, in that opinion, specifically stated that due to the stakes involved, here the death penalty, that it was very possible that less prejudice was required. And then also specifically recognized that the sanction of striking the death penalty is far less draconian or severe than outright dismissal, so perhaps even less prejudice is required. So I think that is an important distinction in terms of the analysis of prejudice in this case. Thank you. Thank you, counsel. That concludes argument in this case. Attorney Pitalski and Attorney Gottfried, you should disconnect from the hearing at this time. And I believe Attorney Marrero, you also should disconnect unless you're staying for another one.